## 23379. CAMP *v.* CURRY-ARRINGTON COMPANY.

Decided July 3, 1934. Rehearing denied September 19, 1934.

*Porter & Mebane,* for plaintiff.
*Maddox, Matthews & Owens,* for defendant.

Broyles, C. J. R. C. Camp brought suit against Curry-Arrington Company for damages on account of personal injuries, alleging, in part, that the defendant was engaged in the wholesale and retail drug business in a three-story brick building; that it used a freight elevator in conveying merchandise from one story to another as well as to and from the basement; that it used large quan-

tities of ice in the conduct of its business, and was buying ice for said business from Rome Ice Company; that the plaintiff, together with one W. C. Adams, "both of whom were in the employ of said Rome Ice Company, went to the place of business of defendant for the purpose of delivering ice to said defendant, for their employer, the said Rome Ice Company;" that W. C. Adams went into defendant's building for the purpose of seeing that the elevator was properly placed on a level with the first floor, so that ice might be . placed thereon for the purpose of being carried into the basement of said building to be used by defendant in the conduct of its business; that Adams placed the elevator on a level with the first floor, left the door leading into the elevator open, and came back to the ice-truck and helped plaintiff unload a 200-pound piece of ice, and plaintiff dragged the ice into defendant's store building and towards the open door of the elevator which had been placed by Adams; that the elevator and shaft are in a space without much light, and that the elevator is encased and scarcely with any light whatever; that for years prior to this time the Rome Ice Company had been delivering ice to the defendant, "and at the special instance and request of the defendant, by placing the ice so delivered, on the elevator of defendant, which was the usual place of delivery," and plaintiff was so attempting to make delivery when he was injured; that after Adams had placed the floor of the elevator on a level with the first floor of the place of business of defendant, and while Adams and plaintiff were unloading the ice from the truck preparatory to placing the same on the elevator for delivery to defendant, an agent and employee of defendant, without notice or warning to plaintiff or Adams, moved said elevator from a level with the first floor where Adams had placed it, to one of the floors above, "without closing the door to said elevator shaft;" that plaintiff pulled the block of ice towards said elevator for the purpose of placing the same thereon, and, not knowing that the elevator had been moved by defendant's employee, fell into said elevator shaft to the concrete floor on the bottom of the cellar, and the 200-pound block of ice fell on top of him while he was lying on the concrete floor in the bottom of the shaft, crushing and injuring him in specified ways. Plaintiff alleges that he was free from fault and exercised all ordinary care for his own protection, and that defendant was negligent in moving the elevator and failing to close the door leading into the eleva-

tor, without any notice or warning to petitioner that the elevator had been moved, the defendant knowing "that said elevator and the space immediately in front of said elevator was in a darkened condition, and that it was with difficulty that the true condition inside of said elevator shaft could be told," and was negligent "in maintaining said elevator in said darkened condition in said elevator shaft and around said elevator shaft."

The defendant denied all allegations of negligence, and alleged that the plaintiff, by the exercise of ordinary care, could have avoided whatever injuries he sustained. On the trial of the case the jury rendered a verdict in favor of the defendant. The plaintiff made a motion for a new trial which was overruled, and the plaintiff excepted.

The third special ground of the motion for a new trial assigns error on the following charge of the court: "If you find from the evidence that Mr. Adams went to the defendant's store on the day the plaintiff was injured, and went through the usual routine preliminary to bringing the ice into the store, just as he had customarily done, and that neither the defendant nor any of its employees knew or had reasonable cause to anticipate that the plaintiff or some other employee of the ice company was with Mr. Adams to assist him in delivering the ice, then I charge you that the defendant would owe to the plaintiff no duty except not to injure him wilfully or wantonly after his presence became actually known to them; and there being no evidence thereof, it would be your duty to find in favor of the defendant, should you find those facts to be true." This charge was error in that it is the law applicable to a trespasser or a mere licensee, and there was no evidence that the plaintiff was a trespasser or a mere licensee. The undisputed evidence shows that he was an implied invitee. He was an employee of the Rome Ice Company, in the prosecution of the ice company's business at the time he was injured, and the ice company, in view of its contractual relation with the defendant company, was an invitee, and was not only permitted to go upon the premises of the defendant company, but it was its duty to do so in order to deliver the ice to the defendant. Under the pleadings and the evidence the defendant was operating a store serving the public and receiving merchandise bought by it, and the ice being delivered by plaintiff was merchandise bought by the defendant in the prosecution of its

business. To those delivering the ice the defendant owed the duty of maintaining its premises in a reasonably safe condition; and its knowledge of who might be sent to said premises for the purpose of delivering the ice could not affect the defendant's duty to the plaintiff or render him a trespasser or a mere licensee. The plaintiff was lawfully upon the premises on an implied invitation, and "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Civil Code (1910), § 4420; *Southern Paramount Pictures Co.* v. *Gaulding,* 24 *Ga. App.* 478 (101 S. E. 311); *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (116 S. E. 57); *Mandeville Mills* v. *Dale,* 2 *Ga. App.* 607 (58 S. E. 1060). As stated in the *Pece* case, supra, "This section places upon such owner or occupier of land the duty to exercise ordinary care, for the safety of his invitees, in *discovering* defects or dangers in the premises or instrumentalities thereon, and imposes a liability for injuries resulting from such defects as a *reasonable inspection would disclose.* Such owner or occupier of land is liable for a failure to warn his invitees of dangers or defects in such premises or instrumentalities, of which he knew or of which it was his duty to know in the exercise of ordinary care. Upon this principle is founded the duty which the proprietor of premises owes to a *contractor's servant* who comes lawfully upon the premises." (Italics ours.)

While the judge, in another portion of his charge, instructed the jury as to the duty the occupier of a building owed to one on his premises by implied invitation, he did not specifically retract the erroneous instruction complained of in this ground. Under such erroneous instruction the jury probably concluded that neither the defendant nor its employees knew or anticipated that the plaintiff was with Mr. Adams to assist him in delivering the ice, and, therefore, that the defendant owed the plaintiff no duty except not to injure him wilfully or wantonly. There being no contention that the injury was wilfully or wantonly inflicted, this charge was particularly harmful to the plaintiff. The evidence on the controlling issues of fact, tending to show negligence of the defendant or lack of ordinary care on the part of the plaintiff (particularly that relat-

ing to light in and around the elevator shaft), was conflicting, and did not demand a verdict in favor of either party; and, because of this error in the change, a new trial is required.

None of the other assignments of error shows cause for a new trial. *Judgment reversed. MacIntyre and Guerry, JJ., concur.*